UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

THEODORE HAMPTON,

          Petitioner,

v.                         Case No. 3:09-cv-471-J-34JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

          Respondents.

_____

## ORDER

### I. Status

Petitioner Hampton initiated this action by filing a pro se
Petition for Writ of Habeas Corpus (Petition) (Doc. #1) under 28
U.S.C. § 2254 on May 20, 2009, pursuant to the mailbox rule.  He
challenges a 2001 state court (Duval County, Florida) judgment of
conviction for sale or delivery of cocaine. Respondents have
submitted a memorandum in opposition to the Petition. See
Respondents' Answer to Petition for Writ of Habeas Corpus
(Response) (Doc. #15); Exhibits (Resp. Ex.) (Doc. #18).  On July
28, 2009, the Court entered an Order to Show Cause and Notice to
Petitioner (Doc. #6), admonishing Petitioner regarding his
obligations and giving Petitioner a time frame in which to submit

a reply.   Petitioner submitted a brief in reply on September 12, 2011.   See Petitioner's Reply to Answer to Writ of Habeas Corpus (Reply) (Doc. #25).   This case is ripe for review.

## II. Procedural History

On September 7, 2000, the State of Florida charged Hampton with sale or delivery of cocaine.  Resp. Ex. 1, Information.  After jury selection, Hampton proceeded to trial.   Resp. Ex. 3, Transcript of the Jury Trial (Tr.).   At the conclusion of the trial, the jury found Hampton guilty, as charged.  Resp. Ex. 4, Verdict; Tr. at 228. The court later denied Hampton's motion for a new trial.  Resp. Exs. 5; 6 at 119.  On March 5, 2001, the trial court sentenced Hampton, as a habitual felony offender, to a term of thirty years of incarceration.   Resp. Exs. 6 at 163; 7, Judgment.

On appeal, Petitioner, through counsel, filed an Initial Brief, arguing that (1) the trial court erroneously admitted copies of money allegedly used during a drug transaction contrary to Hutchinson v. State, 580 So.2d 257 (Fla. 1st DCA 1991); there was insufficient evidence to authenticate the money, and there was no justification to use a copy (the police did not record the serial numbers of the money and re-circulated the money); (2) the trial court abandoned its role of a neutral and impartial magistrate by assisting the State; the court advised the State, in the form of an advisory opinion, what it needed to do to get evidence introduced;

and (3) the Assistant State Attorney improperly commented on Petitioner's right to remain silent and not testify. Resp. Ex. 8. The State filed an Answer Brief, see Resp. Ex. 9, and Petitioner filed a Reply Brief, see Resp. Ex. 10.   On March 13, 2002, the appellate court affirmed Petitioner's conviction and sentence per curiam without issuing a written opinion.   Hampton v. State, 812 So.2d 407 (Fla. 1st DCA 2002); Resp. Ex. 11.   The mandate issued on April 1, 2002.   Resp. Ex. 12.   Petitioner did not seek review in the United States Supreme Court.

On September 20, 2002, Petitioner, through counsel, filed a motion for post conviction relief and supplement pursuant to Florida Rule of Criminal Procedure 3.850.   Resp. Ex. 13.   In his request for post conviction relief (Rule 3.850 motion), Petitioner alleged that his counsel (Erin McCarty and Sandra Young) were ineffective because they failed to: properly preserve for appellate review the objection to the Assistant State Attorney's comment on Hampton's right to remain silent and not to testify (ground one); properly investigate and present Hampton's alibi defense (ground two); investigate an individual by the street name of "Notto," who Hampton claimed was the actual perpetrator of the offense (ground three); and move to suppress Detective Escobar's in-court identification of Hampton, as the man from whom Escobar had purchased the crack cocaine (ground five).   Id.   Additionally, he asserted that counsel (Sandra Young) was ineffective because she

3

misadvised Hampton as to the consequences of taking the stand to testify in his own defense (ground four).  <u>Id</u>.

On January 16, 2004, the trial court denied ground one as legally insufficient and directed the State to respond to grounds two through five.  Resp. Ex. 14.  The State filed a response. Resp. Ex. 15.  On May 3, 2004, Petitioner, through counsel, filed an amended Rule 3.850 motion, asserting ground six as an additional claim of ineffective assistance of counsel: counsel failed to request a jury instruction regarding knowledge of the illicit nature of the substance pursuant to <u>Chicone v. State</u>, 684 So.2d 736 (Fla. 1996).  Resp. Ex. 16.

The court conducted an evidentiary hearing on June 17, 2004, concerning grounds two through six.  Resp. Ex. 17, Transcript of the Evidentiary Hearing (EH Tr.).  On September 24, 2007, the court denied Hampton's Rule 3.850 motion relating to grounds two through six.  Resp. Ex. 18.  The court also denied Hampton's <u>pro</u> <u>se</u> motion for rehearing on October 18, 2007.  Resp. Exs. 19; 20.

Petitioner, proceeding <u>pro</u> <u>se</u>, appealed the denial of his Rule 3.850 motion and filed a brief, <u>see</u> Resp. Ex. 21; the State filed an Answer Brief, <u>see</u> Resp. Ex. 22; and Petitioner filed a Reply Brief, <u>see</u> Resp. Ex. 23.  On September 12, 2008, the appellate court affirmed the trial court's decision per curiam. <u>Hampton v. State</u>, 990 So.2d 1064 (Fla. 1st DCA 2008); Resp. Ex. 24.  The mandate issued on October 8, 2008.  Resp. Ex. 24.  The court denied

4

Petitioner's motion for rehearing on February 27, 2009.  Resp. Exs. 25;26.

During the pendency of his Rule 3.850 motion, Petitioner filed a pro se motion to correct illegal sentence on January 19, 2005. Resp. Ex. 27.  The court denied the motion on February 8, 2005. Resp. Ex. 28.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations.  See 28 U.S.C. § 2244(d); Response at 7-9.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  Id.  The pertinent facts of this case are fully developed in the record before the Court.  Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d).  This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).  We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003).

> As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

>> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context.  An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable.  Questions of law and mixed questions of law and fact are reviewed de novo, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

> Jennings v. McDonough, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted).  In sum, "a federal habeas court making the 'unreasonable application'

6

> inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409, 120 S.Ct. at 1521.  Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual findings] by clear and convincing evidence."[1] 28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir. 2010), cert. denied, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.  Harrington v. Richter, 131 S.Ct. 770, 785 (2011) (holding that section 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003).  Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

---

[1] "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts."  Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[2] A reasonable probability is a

---

[2] See Purvis v. Crosby, 451 F.3d 734, 737 (11th Cir. 2006) (stating that, where petitioner claims counsel should have objected, "we are to gauge prejudice against the outcome of the trial: whether there is a reasonable probability of a different result at trial, not on appeal."), cert. denied, 549 U.S. 1035 (2006).  The Court noted that its decision in Davis v. Sec'y for the Dep't of Corr., 341 F.3d 1310 (11th Cir. 2003) (per curiam), "is not to the contrary." Purvis, 451 F.3d at 737.

probability sufficient to undermine confidence in the outcome." _Id_., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." _Id_., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." _Id_., at 687, 104 S.Ct. 2052.

_Harrington_, 131 S.Ct. at 787-88.

Since both prongs of the two-part _Strickland_ test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." _Ward_, 592 F.3d at 1163 (citation omitted). "Surmounting _Strickland_'s high bar is never an easy task." _Harrington_, 131 S.Ct. at 788 (quoting _Padilla v. Kentucky_, 130 S.Ct. 1473, 1485 (2010)).

A state court's adjudication of an ineffectiveness claim is accorded great deference. "The standards created by _Strickland_ and

---

[In _Davis_, 341 F.3d 1310] trial counsel objected during voir dire to the _Batson_ error that was being committed but when his objection was rejected, counsel failed to take the next step of renewing that objection after the conclusion of voir dire; in the Florida courts that is a necessary step before the issue may be reviewed on appeal. _Id_. at 1312. This Court held that because the failure of counsel was solely in his role as appellate counsel at trial (those are not the words we used in _Davis_, but it is what we meant), the prejudice inquiry should focus on the effect that counsel's omission at trial had on the appeal. _Id_. at 1315-16.

_Id_.

9

§ 2254(d) are both 'highly deferential,' [Strickland], at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, Knowles[3], 556 U.S., at ----, 129 S.Ct. at 1420." Harrington, 131 S.Ct. at 788.

> The question "is not whether a federal court believes the state court's determination" under the Strickland standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro, supra, at 473, 127 S.Ct. 1933. And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009); see also Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision.").

---

[3] Knowles v. Mirzayance, 556 U.S. 111 (2009).

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Petitioner claims:

> The trial court erroneously admitted copies of
> marked money allegedly used during a drug
> transaction; especially where there was
> insufficient evidence as to the authenticity
> of the money, and no justification to use a
> copy (the police did not record the serial
> numbers of the money and re-circulated the
> money), thereby abrogating Petitioner's Due
> Process Rights guaranteed under [the] 6th and
> 14th Amendments U.S.C.A.

Petition at 5 (emphasis deleted). Petitioner argued this issue on

direct appeal, see Resp. Exs. 8 at 11-15; 10 at 3-4, the State

filed an Answer Brief, see Resp. Ex. 9 at 6-20, and the appellate

court affirmed Petitioner's conviction and sentence per curiam

without a written opinion concerning this issue, Hampton, 812 So.2d

407; Resp. Ex. 11.

The State, in its appellate brief, addressed the claim on the

merits. Thus, the appellate court may have affirmed Petitioner's

conviction based on the State's argument on the merits. If the

appellate court addressed the merits, Petitioner would not be

entitled to relief because the state court's adjudication of this

claim is entitled to deference under AEDPA.[4] After a thorough

review of the record and the applicable law, the Court concludes

---

[4] In Harrington, 131 S.Ct. at 785, the Court "h[eld] and
reconfirm[ed] that § 2254(d) does not require a state court to give
reasons before its decision can be deemed to have been 'adjudicated
on the merits.'"

that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Additionally, even assuming that the state court's adjudication of this claim is not entitled to deference, Petitioner's claim is without merit. Given the record, the trial court did not abuse its discretion in admitting the photocopies of the marked money because there was no issue relating to authenticity. Not only was there a proper chain of custody, but there was ample proof that the photocopies of the marked money matched the currency recovered from Hampton at the time of his arrest. <u>See</u> Resp. Exs. 2, Motion in Limine; Tr. at 8-9, 37-38 (Detective Escobar's testimony describing "that distinguishing mark" he put on the bottom of the money); 47-52 (Escobar's testimony concerning the chain of custody of the marked money); 77, 81 (Detective Hughey's testimony that the policy of the Jacksonville Sheriff's Office is to make a photocopy of the money for the property room so that the money can be re-circulated); 116-17 (Officer Williams' testimony concerning Hampton's arrest and the marked money). In addressing the issue, the trial judge stated:

> If [defense counsel] would -- when it's
> actually offered if you would just make your
> objection for the reasons previously stated,

something along that so the record will be clear.

At that time I do intend to, assuming the proper predicate has been laid, identification between now and then, I do intend to admit the copy of the money.

Officer -- Detective Hughey did testify that he personally within a year and one month period of time engaged in four hundred transactions,[5] although some of those are after this, and if there was $20 involved in each of those that would be $8000.

He also said there were eight other detectives just in his squad, although he did not know the exact numbers he did know they did other transactions.[6] And it would be -- I would find there has been presented no evidence of any bad motive in not retaining the original so as [to] deprive the defendant of any due process rights, that it would be unrealistic to tie up that much in tax payers['] money be it $8000 or $64,000, depending on how you extrapolate it.

And the only reason the copies are shown is to show the mark that was made and whether the mark was on the original or the copy wouldn't make any difference.

I do understand the defendant's objection, they did not have the opportunity to examine the original of it, perhaps test it for fingerprints or otherwise test it but I do not find the reason for the copying as opposed to the original once again was to deprive the defendant of any due process rights.

So I am going to admit it but certainly defense counsel may -- can make whatever arguments she wishes to make concerning the

---

[5] See Tr. at 81.

[6] See Tr. at 82.

>           weight of the evidence and the failure to keep
>           the original. And that will be my ruling on
>           that point.

Tr. at 107-09. Over defense counsel's objection, the trial judge

admitted the photocopies. Id. at 118. When the State rested,

defense counsel renewed her objection. Id. at 126-27.

Given the record, the trial court did not abuse its discretion

in admitting the photocopies of the money. Moreover, to the extent

that there may have been a federal constitutional violation, this

Circuit has recognized that a reviewing court must engage in a

harmless error analysis. United States v. Allen, 302 F.3d 1260,

1276 (11th Cir. 2002). On federal habeas review, harmless error is

determined by applying the standard set forth in Brecht v.

Abrahamson, 507 U.S. 619 (1993). As the Eleventh Circuit recently

expressed: "In short, we observe, consistent with the Supreme

Court's decision in Fry [v. Pliler, 551 U.S. 112 (2007)], that a

federal habeas court may deny relief based solely on a

determination that a federal constitutional error was harmless

under the Brecht standard." Mansfield v. Sec'y, Dep't of Corr.,

679 F.3d 1301, 1308 (11th Cir. 2012).

Applying Brecht, "a federal constitutional error is harmless

unless there is 'actual prejudice,' meaning that the error had a

'substantial and injurious effect or influence' on the jury's

verdict." Id. at 1307 (citing Brecht, 507 U.S. at 637).

Accordingly, "the erroneous admission of evidence is likely to be

14

harmless under the Brecht standard where there is significant
corroborating evidence or where other evidence of guilt is
overwhelming." Id. at 1313 (citations omitted). Given the State's
evidence against Hampton, including the identification testimony of
Detective Escobar, Detective Hughey, and Officer Williams, any
error in the admission of the photocopies was harmless.
Petitioner's ground one does not warrant federal habeas relief.
See Response at 16-35; Resp. Ex. 9 at 20.

### B. Ground Two

As ground two, Petitioner claims:

> The trial court committed fundamental error
> when [the] court abandoned its role of a
> neutral and impartial magistrate by assisting
> the State with [an] advisory opinion in the
> decision making process, thereby denying
> Petitioner's due process rights as guaranteed
> by the 6th, 14th, Amendments U.S.C.A.

Petition at 7. He asserts that, when defense counsel objected to
the introduction of the photocopies of the marked money, the trial
judge stated that he needed some testimony on how many drug
transactions were involved each year and how much money was
utilized so that the State could establish that it was not
realistic to store the money (actually used in the transaction) in
the property room. Hampton concludes that the trial judge's
actions of guiding the State became the equivalent of ensuring that
the State made a complete record and helping the State try its
case. Petitioner argued this issue on direct appeal, see Resp.

Exs. 8 at 16-20; 10 at 5-6, the State filed an Answer Brief, <u>see</u> Resp. Ex. 9 at 21-30, and the appellate court affirmed Petitioner's conviction and sentence per curiam without a written opinion concerning this issue, <u>Hampton</u>, 812 So.2d 407; Resp. Ex. 11.

In its appellate brief, the State addressed the claim on the merits. Thus, the appellate court may have affirmed Petitioner's conviction based on the State's argument on the merits. If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA.[7] After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Additionally, even assuming that the state court's adjudication of this claim is not entitled to deference, Petitioner's claim is without merit. Given the record, the trial court did not abuse its discretion. Instead, the trial court performed its duty by engaging in an attempt to obtain sufficient evidence in order to rule upon the admissibility of the photocopied

---

[7] <u>See</u> <u>Harrington</u>, 131 S.Ct. at 785.

16

money.   Petitioner's ground two does not warrant federal habeas relief.   <u>See</u> Response at 35-48; Resp. Ex. 9.

## C. Ground Three

As  ground  three,  Petitioner  claims  that  counsel  was ineffective because she failed to properly preserve for appellate review the issue relating to the prosecutor's improper comment on Hampton's right to remain silent and not testify.   As acknowledged by the parties, Petitioner raised this claim in his Rule 3.850 motion.[8]  The trial court ultimately denied the Rule 3.850 motion with respect to this issue, finding the ground to be "legally insufficient."   Resp. Ex. 14.  Upon Petitioner's appeal, the appellate court affirmed the denial per curiam.

Assuming the appellate court affirmed the denial of the Rule 3.850 motion as to this claim on the merits, there are qualifying state court decisions.   Therefore, this claim will be addressed applying the deferential standard for federal court review of state court adjudications required by AEDPA.   After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established  federal  law  and  did  not  involve  an  unreasonable

_____

[8] On direct appeal, Hampton argued that the prosecutor improperly commented on his right to remain silent and not testify. <u>See</u> Resp. Ex. 8, Ground III, at 21-23.  The State claimed that the issue was not properly preserved for review.  <u>See</u> Resp. Ex. 9 at 31-35.  The appellate court affirmed Petitioner's conviction and sentence per curiam without issuing a written opinion.  <u>Hampton</u>, 812 So.2d 407; Resp. Ex. 11.

application of clearly established federal law.  Nor were the adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Alternatively, if the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is, nevertheless, without merit.  In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence.  The presumption that counsel's performance was reasonable is even stronger when, as in this case, counsel is an experienced criminal defense attorney.[9]  The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Strickland, 466 U.S. at 690.  "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'"  Rompilla v. Beard, 545 U.S. 374, 381 (2005)

---

[9] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger."  Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc), cert. denied, 531 U.S. 1204 (2001); see Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), cert. denied, 530 U.S. 1246 (2000).  In denying Hampton's Rule 3.850 motion, the judge noted that "this Court knows Ms. Young to be a competent and experienced criminal defense attorney . . . ."  Resp. Ex. 18 at 108.

(citations omitted).   Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose.  Dingle v. Sec'y for Dept. of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted), cert. denied, 552 U.S. 990 (2007).  Petitioner has failed to carry this burden.

The following facts are relevant for resolution of this claim. Petitioner's defense at trial was that he could not have been at the location where he was alleged to have sold cocaine to Detective Escobar because at the time in question, approximately 12:20 p.m., he was at or leaving a health clinic.  To support his defense, he presented testimony from Sylvania Brandon and Denise White. Sylvania Brandon, a laboratory technician at the Northwest Quadrant Health Care Center, testified that Hampton left the clinic on the date in question sometime between 12:05 p.m. and 12:15 p.m.  See Tr. at 25-31.  Denise White, an investigator with the Public Defender's Office, testified that she drove her car from the health center to the site of the drug transaction and that the trip took nine minutes.  Id. at 152-56.

During the prosecutor's closing argument, the following colloquy ensued:

> [PROSECUTOR]:  Now, the lady from the
> doctor's office told you that [Hampton] was

19

skipped over for whatever reason because he didn't sign in properly or something along those lines, but he was very upset and very angry and he left.  And she told you it was between 12:05, to the latest of 12:15.

And then the defense brought in their investigator that said, yeah, takes about nine minutes to make that drive.  It takes nine minutes to make that drive when you're investigating the case for the Public Defender's office but there is no -- there's been no evidence presented to you how long it took this defendant to make that drive.

[DEFENSE COUNSEL]: Objection.

THE COURT: Miss Strollo, you want to join us at side-bar, please.

(Counsel for the State and Defense and [the] court reporter approached the bench for a side-bar conference, out of the hearing of the jury, where the following proceedings were had:)

THE COURT: okay.

[DEFENSE COUNSEL]: Objection, shifting of the burden, Judge.  It's the State's job to prove their case, rather what he has done there's been no evidence presented by the defense of how long it took that defendant, no evidence presented to say how long it took that defendant to go from the Vernon Road address to the 8th and Silver Street address.

THE COURT: Okay.  Mr. Scharf.

[PROSECUTOR]: Your Honor, the defense's case is an alibi and if they're going to put on alibi defense –

THE COURT: Keep your voice down.

[PROSECUTOR]: If they're going to put on an alibi defense I can argue it hasn't been shown and that's what I'm doing.  There's been

no evidence presented how long it took this
defendant to make that drive.  They attempted
to show how long it would take someone to make
that drive but there's been no evidence that
showed this defendant made that drive and that
is what I'm telling the jury.  There hasn't
been that alibi defense.

THE COURT:  All right.  Well, I think
it's taken in that lot as opposed to
commenting on the defendant's failure to
either testify or prove a point of how long it
took him to do it, it was more hypothetical
setting of whatever vehicle the defendant had
on that day and how long it took and that sort
of thing was the argument, so I'll overrule
your objection.  Thank you.

(At the conclusion of the side-bar
conference, the following further proceedings
were had in the presence of the jury.)

[PROSECUTOR]: What you heard was that it
took the investigator to drive approximately
nine minutes from the doctor's office to the
location where the defendant sold cocaine.
But you have no evidence in front of you how
long it took this defendant, what time he
left, how fast he was driving, any of these
things that you would need to be able to know
what time he arrived at the place where he
sold the cocaine to the detectives.

And these times are not concrete, these
times were approximate times that the doctor's
office was approximate, maybe 12:05, 12:15.
The defendant told you approximately 12:20 and
he was approximately arrested at 12:30.  These
are not concrete, written in stone exact
times.

So really what the defendant's evidence
does show is that the defendant was at the
place where the drug transaction happened at
the time it did happen.  It doesn't prove an
alibi that he was somewhere else, because the
timing works.  And if the timing works, then
there has been no alibi because alibi means

21

> that he was somewhere other than the place of
> the commission of the crime.
>
> So when you have the defendant identified
> by two officers, the marked money found on
> him, and his guilt completely shown by him
> wanting to work the case off, there is no
> other conclusion than that he's guilty of the
> sale of cocaine.  Thank you.

Tr. at 175-79.

Given the record, counsel's performance was within the wide range of professionally competent assistance.  The prosecutor's comment was not improper; his argument neither improperly shifted the burden of proof nor impermissibly commented upon Hampton's failure to testify or his right to remain silent.  Instead, the prosecutor was simply responding to Hampton's theory of defense and urging the jury to consider the evidence that had been presented.

Attorneys are permitted wide latitude in their closing arguments, and the record reflects that the trial judge instructed the jury that the attorneys were not witnesses in the case, and therefore their statements and arguments were not evidence.  Tr. at 167; see Hammond v. Hall, 586 F.3d 1289, 1334 (11th Cir. 2009), cert. denied, 131 S.Ct. 917 (2011); Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001) (citations omitted) (stating that "jurors are presumed to follow the court's instructions."), cert. denied, 534 U.S. 1085 (2002).  Thus, in light of the circumstances surrounding Hampton's alibi defense and his presentation of the defense at trial, it is unlikely that the jury would have considered the

22

prosecutor's comment as referring to Hampton's failure to testify.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that there would have been a more favorable outcome on appeal if counsel had properly preserved the issue for appellate review.  See Davis, 341 F.3d at 1316 (stating that the appropriate prejudice inquiry is whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved).[10]  Therefore, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

### D. Ground Four

As ground four, Petitioner claims that counsel was ineffective because she failed to properly investigate and present his alibi defense that "would have put Petitioner in another location at the time of [the] offense."  As acknowledged by the parties, Petitioner raised this claim in his Rule 3.850 motion.  After conducting an

---

[10] The reversal of a conviction is warranted only when improper comments by a prosecutor have "'so infected the trial with unfairness as to make the resulting conviction [or sentence] a denial of due process.'  Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974))."  Parker v. Head, 244 F.3d 831, 838 (11th Cir. 2001), cert. denied, 534 U.S. 1046 (2001).  After thoroughly reviewing the record, viewing the comment in the context of the trial as a whole, and assessing its "probable impact" on the jury, see United States v. Hill, 643 F.3d 807, 849 (11th Cir. 2011), this Court is convinced that the prosecutor's comment did not result in a due process violation.

evidentiary hearing on the issue (at which Hampton and defense counsel testified), the trial court ultimately denied the Rule 3.850 motion with respect to this issue, stating:

> Ground II complains of ineffective assistance of counsel by failure to investigate and present an alibi defense. Both of the defendant's counsel at trial, Erin McCarty, Esquire, and Sandra Young, Esquire, testified. They each testified that the defendant had never provided them with the names of Kathy McArthur or Robin Williams.[11] Ms. McCarty testified that the defendant gave her some "street" names of people with no addresses, and that he assured her he would get her more information than that, but never did. Ms. Young testified similarly that he never gave her any names of people other than nicknames. Ms. Young testified that she eventually learned some information about Robin Williams as a result of her own investigation.[12] She testified that her notes indicated that she only got "street" names from the defendant. Appendix G, attached to the defendant's motion, is a copy of progress notes that were introduced into evidence at the trial. The defendant states that the notes for July 27th indicate that Kathy McArthur would testify that the defendant left the clinic on July 27th no earlier than 12:15 p.m., but that it could have been as late as 12:25 p.m. There is no such statement from Ms. McArthur anywhere in Appendix G. Appendix G does not contain that statement; rather the progress notes reflect that Kathy McArthur put in the progress notes that the defendant left at 12:15 p.m.,[13] which was what Sylvia Brandon testified to at trial. Ms. Brandon testified upon examination by Ms. Young, that she could only go by what Kathy said in the progress

---

[11] See EH Tr. at 178.

[12] See EH Tr. at 179, 191-92.

[13] See Resp. Ex. 13, Exhibit G, Progress Notes.

notes, which was that he left at 12:15 p.m.
(TT pg. 30, lines 20-21.)  This also matched
Ms. Brandon's memory of the incident. (TT pg.
31, lines 1-14.)

　　Ms. Young and Ms. McCarty are both
members of the Florida Bar in good standing.
They both practice their profession subject to
rules which require absolute honesty and
candor with all tribunals. They are subject to
losing their privilege of practicing law if
they violate these rules. Neither one has any
interest in the outcome of these proceedings.
Both were straightforward and responsive in
answering the attorneys' questions. Neither of
them has ever been convicted of a crime. The
defendant, on the other hand, is a four-time
convicted felon, who is extremely interested
in the outcome of these proceedings. He is
desperately trying to escape a lengthy prison
sentence. His demeanor on the stand was
evasive and argumentative. His testimony and
his wording of many of the claims raised in
the motion was deceptive and inaccurate,
compared to what the record actually shows.
Therefore, throughout this order, where
conflicts exist between the testimony of the
defendant and the attorneys, Ms. Young and Ms.
McCarty, the Court finds the testimony of Ms.
Young and Ms. McCarty to be credible, and the
testimony of Mr. Hampton to be unworthy of
belief.

　　Ground II of the motion is conclusively
refuted by the record herein, including the
testimony taken at the evidentiary hearing.

Resp. Ex. 18 at 105-07.  Upon Petitioner's appeal, the appellate

court affirmed the denial per curiam.

Assuming the appellate court affirmed the denial of the Rule

3.850 motion as to this claim on the merits, there are qualifying

state court decisions.  Therefore, this claim will be addressed

applying the deferential standard for federal court review of state

court adjudications required by AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Alternatively, if the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is, nevertheless, without merit because the record amply supports the trial court's findings. After the evidentiary hearing, the state court resolved the credibility issue in favor of believing counsels' testimony over that of Petitioner. The Court notes that credibility determinations are questions of fact. See Martin v. Kemp, 760 F.2d 1244, 1247 (1985) (per curiam) (finding that factual issues include basic, primary, or historical facts, such as external events and credibility determinations). Petitioner has not rebutted the trial court's credibility finding by clear and convincing evidence. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Given the trial court's credibility determination, Petitioner's claim is wholly unsupported and therefore must fail.

Petitioner has failed to carry the burden of showing that no competent attorney would have taken the action that counsel, here, chose. Given the record, counsel's performance was within the wide range of professionally competent assistance. Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had called the two witnesses who allegedly would have testified that Hampton left the health care center sometime between 12:15 and 12:25 p.m. that day.[14]  Therefore, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. See EH Tr.; Response at 62-71.

### E. Ground Five

As ground five, Petitioner claims that counsel (Erin McCarty and Sandra Young) were ineffective because they failed to investigate an individual by the name of "Notto" who Petitioner claims had sold the crack cocaine to Detective Escobar. He asserts that such an investigation would have rectified the misidentification and would have identified "Notto" (whose physical features apparently resembled Petitioner) as the person who had sold drugs that day. As acknowledged by the parties, Petitioner raised this claim in his Rule 3.850 motion. After conducting an

---

[14] See Resp. Ex. 13 at 5.

27

evidentiary hearing on the issue, the trial court ultimately denied

the Rule 3.850 motion with respect to this issue, stating:

> Ground III complains of ineffective
> assistance of counsel by failure to
> investigate a man named "Notto" (sic). The
> defendant testified that he gave information
> about "Notto" to his attorneys through his
> wife, because he was too busy working. His
> wife testified that she communicated the
> information to Ms. Ann Finnell. Ms. Young
> testified that the only time Ann Finnell
> became involved in this case was after the
> trial, after a verdict had been entered, when
> Mrs. Hampton came to the Public Defender's
> Office and met with Ms. Finnell, who was Ms.
> Young's supervisor. Ms. Finnell talked to
> Mrs. Hampton and then to Sandra Young, but
> only after the trial was completed. No
> conversation between Mrs. Hampton and Ms.
> Finnell took place until the trial was over.
> Ms. Young further testified that no
> information regarding "Notto" was ever
> received by her from any person. Ms. McCarty
> testified as well that she never heard of any
> person named "Notto" or of any "street" people
> (Jimmy Lee, Freddie B, or John Boy) at any
> time from any source. Mrs. Hampton, the
> defendant's wife, is herself a two-time
> convicted felon. She is also extremely
> interested in the outcome of these
> proceedings, desirous of getting her husband
> released from prison. As with Mr. Hampton,
> when a conflict exists between the testimony
> of Mrs. Hampton and Ms. Young and Ms. McCarty,
> the Court finds the testimony of Ms. Young and
> Ms. McCarty to be credible, and the testimony
> of Mrs. Hampton to be unworthy of belief.
>
> Ground III is conclusively refuted by the
> record, including the testimony at the
> evidentiary hearing.

Resp. Ex. 18 at 107-08.  On Petitioner's appeal, the appellate

court affirmed the denial per curiam.

Given the record in the instant action, the appellate court may have affirmed the denial of Petitioner's motion for post conviction relief on the merits.  If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA.  After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.  Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is still without merit.  The record supports the trial court's findings.  After the evidentiary hearing, the state court resolved the credibility issue in favor of believing counsels' testimony over that of Petitioner and his wife.  Given the trial court's credibility determination, Petitioner's claim is wholly unsupported, and therefore must fail.

Given the record, counsels' performance was within the wide range of professionally competent assistance.  As stated by the post-conviction court in denying the Rule 3.850 motion, neither attorney had received any information relating to "Notto."  See EH Tr. at 182-85, 222, 224-25.  Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had investigated "Notto."  Therefore, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.  See Response at 73-78.

## F. Ground Six

As ground six, Petitioner claims that counsel was ineffective because she (Sandra Young) failed to move to suppress Detective Escobar's in-court identification of Petitioner, as the man who had sold him crack cocaine.  As acknowledged by the parties, Petitioner raised this claim in his Rule 3.850 motion. After conducting an evidentiary hearing on the issue, the trial court ultimately denied the Rule 3.850 motion with respect to this issue, stating:

> Ground V complains of ineffective assistance of counsel for failure to move to suppress the in-court identification of the defendant by Detective Escobar as the man from whom he purchased crack cocaine, because the detective was shown only one photograph.  The motion itself fails to set forth any valid grounds for suppression of the in-court identification.  Further, Ms. Young testified that there was no legal basis for her to

> object to the in-court identification of the
> defendant by Detective Escobar.[15] She
> testified unequivocally that Detective Escobar
> had already identified Mr. Hampton as the
> person who had committed that act during his
> deposition.[16] Failure to raise objections
> for which there is no legal basis cannot
> constitute ineffective assistance of counsel.

Resp. Ex. 18 at 108-09. Upon Petitioner's appeal, the appellate court affirmed the trial court's denial per curiam.

Thus, the appellate court may have affirmed the denial of Petitioner's motion for post conviction relief on the merits. If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Alternatively, if the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim

---

[15] See EH Tr. at 187.

[16] See EH Tr. at 187.

is, nevertheless, without merit.  The record supports the trial court's findings.  Detective Escobar's in-court testimony demonstrates his independent recollection, untainted by the photograph procedure, of Petitioner as the man who had sold him drugs on July 27, 2000.  Detective Escobar observed Petitioner's clothing and appearance for some period prior to approaching Petitioner on the street and made a daytime hand-to-hand purchase from him.  Tr. at 41, 47, 49, 67, 73-75.  Shortly after the transaction, Detective Hughey, upon conferring with Detective Escobar, forwarded a description to Officer Williams who later arrested Petitioner.  Id. at 87, 101, 112, 122. Later that same day, Detective Escobar identified photographs (close-up facial shot and a full body shot) of Petitioner, as matching that of the person who had sold him drugs.  Id. at 50.

Petitioner has failed to carry his burden of establishing that no competent attorney would have taken the action that counsel, here, chose.  Given the record, counsel's performance was within the wide range of professionally competent assistance.  Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had moved to suppress Detective Escobar's in-court identification of Hampton.  The State's evidence against Petitioner was substantial.  When Officer Hughey arrested

Petitioner shortly after the drug transaction, he found Petitioner in possession of the pre-marked money.  Id. at 116-17.  Moreover, after being read Miranda[17] warnings, Petitioner made a voluntary statement that he wanted to talk to the detectives to see if he could work off his case because he was looking at fifteen years. Id. at 113-16.  Accordingly, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## G. Ground Seven

As ground seven, Petitioner claims that counsel was ineffective because she failed to request a Chicone[18] jury instruction.  As acknowledged by the parties, Petitioner raised this claim in his Rule 3.850 motion.  After conducting an evidentiary hearing on the issue, the trial court ultimately denied the Rule 3.850 motion with respect to this issue, stating:

> Ground VI alleges ineffective assistance of counsel for failure to request a Chicone instruction.  Ms. Young testified that the defendant consistently told her that he did not commit this crime.[19]  He testified that he was not the man on the corner that had the drugs and sold them to the detective.[20]  She said that his defense was inconsistent with a Chicone defense, wherein the defendant would

---

[17] Miranda v. Arizona, 384 U.S. 436 (1966).

[18] Chicone v. State, 684 So.2d 736 (Fla. 1996).

[19] See EH Tr. at 188.

[20] See EH Tr. at 188.

> testify that, while he did the act of which he
> was accused, he did not know or understand the
> illegalities of the nature of what was going
> on, or the illicit nature of the substance
> itself, in this case.[21]  Ms. Young testified
> that Mr. Hampton never told her anything other
> than the fact that it was not him, and that he
> had not sold the drugs.  Failure to request a
> jury instruction on issues not raised by the
> evidence and not consistent with the defense
> raised by the defendant himself cannot be the
> basis for a claim of ineffective assistance of
> counsel.

Resp. Ex. 18 at 109.  Upon Petitioner's appeal, the appellate court affirmed the denial per curiam.

Assuming the appellate court affirmed the denial of the Rule 3.850 motion as to this claim on the merits, there are qualifying state court decisions.  Therefore, this claim will be addressed applying the deferential standard for federal court review of state court adjudications.  After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.  Nor were the adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.

---

[21] See EH Tr. at 188.

Alternatively, if the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is, nevertheless, without merit. The record supports the trial court's conclusion. An explanation follows. The Due Process Clause of the Fourteenth Amendment requires the State to prove beyond a reasonable doubt each element of the offense charged. Thompson v. Nagle, 118 F.3d 1442, 1448 (11th Cir. 1997) (citing Jackson v. Virginia, 443 U.S. 307, 314 (1979)), cert. denied, 522 U.S. 1125 (1998). First, this Court reviews the state law history, which is the foundation for Petitioner's claim:

> In Chicone, the supreme court held that the offense of possession of a controlled substance included not only knowledge that the substance was in the defendant's possession, but also knowledge of the illicit nature of the substance. See id. at 738.[22] Subsequently, in Scott v. State, 808 So.2d 166 (Fla. 2002), the supreme court determined that, regardless of the defense raised or the affirmative defenses asserted, a defendant is entitled to an instruction on the element of guilty knowledge in a possession case because it is an element of the crime. See id. at 170. The Scott court stated that failure to give the requested instruction is not harmless error. Id. In McMillon v. State, 813 So.2d 56 (Fla. 2002), Chicone was extended to cases where the defendant was charged with sale of cocaine.

> Both Chicone and Scott were addressed, however, by the legislature's enactment of section 893.101, Florida Statutes (2002), which states the following:

---

[22] Chicone v. State, 684 So.2d 736 (Fla. 1996).

35

(1) The Legislature finds that the cases of Scott v. State, Slip Opinion No. SC 94701 [,808 So.2d 166] (Fla. 2002) and Chicone v. State, 684 So.2d 736 (Fla. 1996), holding that the state must prove the defendant knew of the illicit nature of a controlled substance found in his or her actual or constructive possession, were contrary to legislative intent.

(2) The Legislature finds that knowledge of the illicit nature of a controlled substance is not an element of any offense under this chapter. Lack of knowledge of the illicit nature of a controlled substance is an affirmative defense to the offenses of this chapter.

The effective date of the statute is May 13, 2002 and it may not be applied retroactively. See Quaintance v. State, 845 So.2d 294 (Fla. 1st DCA 2003) (For any offense occurring prior to May 13, 2002, an essential element of the crime of possession of an illegal substance was knowledge of the illicit nature of the substance); see also Blunt v. State, 831 So.2d 770, 772 (Fla. 4th DCA 2002) (May 13, 2002 law may not be applied retroactively to a charge arising before its effective date).

The crime in this case occurred in October 2000, a date which precedes the effective date of the statute [(May 13, 2002)]. Thus, following Chicone, appellant was entitled to a jury instruction on the issue of his knowledge of the illicit nature of the substance on the delivery charge. Based on Scott, it was not harmless error for the trial court to deny appellant's request for the Chicone instruction on the sale/delivery charge. Appellant's conviction for that charge only must, therefore, be reversed and the cause remanded for a new

36

trial where he will be entitled to the <u>Chicone</u> instruction.

<u>Sandifer v. State</u>, 851 So.2d 788, 789-90 (Fla. 4th DCA 2003).

The crime in the instant case occurred on July 27, 2000, a date preceding May 13, 2002, the effective date of the statute. Thus, following <u>Chicone</u>, if counsel had requested the <u>Chicone</u> instruction, the trial court probably would have given the instruction.[23]   Nevertheless, the element of knowledge of the illicit nature of the substance was not in dispute at Hampton's trial.[24]   Instead, Hampton relied upon an alibi defense, asserting that he was not the one who had sold drugs to Detective Escobar on July 27, 2000; the defense called witnesses to establish Hampton's whereabouts at a health care center at about the time when Detective Escobar bought drugs from the perpetrator at another location.

Even assuming that counsel's performance was deficient for not requesting the <u>Chicone</u> jury instruction, Petitioner has not shown prejudice.  Given the evidence presented at the trial and the fact that the jury undoubtedly believed the testimony of Detective Escobar, Detective Hughey, and Officer Williams, there is no reasonable probability that the outcome of the case would have been

---

[23] <u>See</u> <u>Pigford v. State</u>, 935 So.2d 93, 96 (Fla. 5th DCA 2006).

[24] <u>See</u> <u>Chavez-Perez v. McNeil</u>, No. 8:04-CV-2568-T-30TBM, 2008 WL 450034, at *5 (M.D. Fla. Feb. 15, 2008) (not reported in F.Supp.2d) ("Guilty knowledge was not an issue in Petitioner's case.  Counsel need not have requested a <u>Chicone</u> instruction.").

different if counsel had requested the <u>Chicone</u> instruction and the jury had been instructed that knowledge of the illicit nature of the substance was an element of a sale of cocaine offense that the State was required to prove beyond a reasonable doubt. Therefore, Hampton's ineffectiveness claim is without merit since he has not shown any resulting prejudice.

### VIII. Conclusion

Upon consideration of the foregoing, the undersigned finds that "[u]nder the doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard, <u>see</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam)," Petitioner's ineffective assistance claims fail. <u>Knowles</u>, 556 U.S. at 123. The remainder of Petitioner's claims are without merit. Accordingly, for these reasons, the Petition will be denied, and this case will be dismissed with prejudice.

### IX. Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district

38

court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

39

3.    If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability.   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 9th day of August, 2012.

MARCIA MORALES HOWARD
United States District Judge

sc 5/30
c:
Theodore Hampton
Ass't Attorney General (Duffy)